**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

———————————————————

**WINSTON TYLER HENCELY,**
*Plaintiff–Appellant,*

**v.**

**FLUOR CORPORATION, FLUOR ENTERPRISES, INC., FLUOR INTERCONTINENTAL, INC., FLUOR GOVERNMENT GROUP INTERNATIONAL, INC.**
*Defendants–Appellees.*

———————————————————

*On Appeal from the United States District Court
for the District of South Carolina
Case No. 6:19-cv-00489-BHH*

**PETITION FOR REHEARING AND REHEARING EN BANC**

James E. Butler, Jr.
Daniel E. Philyaw
Allison Brennan Bailey
BUTLER PRATHER LLP
P.O. Box 2962
105 13th Street
Columbus, GA 31901
(404) 321-1700

Robert H. Snyder, Jr.
CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave., Suite 885
Decatur, GA 30030
(404) 800-4828

Beattie Ashmore
BEATTIE B. ASHMORE, P.A.

650 E. Washington Street
Greenville, SC 29601
(864) 467-1001

D. Josey Brewer
LAW OFFICE OF D. JOSEV BREWER
650 E. Washington Street
Greenville, SC 29601
(864) 383-5250

W. Andrew Bowen
Paul W. Painter III
Stephen D. Morrison, III
BOWEN PAINTER, LLC
308 Commercial Dr., Suite 100
(912) 335-1909

*Attorneys for Plaintiff-Appellant*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................. 1

INTRODUCTION ...................................................................... 2

  I.  The panel's decision conflicts with the FTCA, *Boyle*, and preemption jurisprudence. .................................................... 4

  II.  The panel's decision applied *Burn Pit* incorrectly, or at the very least, *Burn Pit* should be reconsidered. ............................................... 7

  III. The panel's conflict with Supreme Court precedent is magnified by the new split with the Second Circuit, which the panel did not address. ............................................................................12

  IV. The panel majority erred by construing facts against Hencely at summary judgment. ..........................................................17

CONCLUSION ......................................................................21

# TABLE OF AUTHORITIES

*Al-Shimari v. CACI Int'l, Inc.*, 658 F.3d 413 (4th Cir. 2011) .................. 7

*Badilla v. Midwest Air Traffic Control Service, Inc.*, 8 F.4th 105 (2d Cir. 2021) ........................................................................................ *passim*

*Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) ............. 1, 4, 5, 6

*Harris v. Kellogg, Brown & Root Servs., Inc.*, 724 F.3d 458 (3d Cir. 2013) .................................................................................... 8, 13, 19

*In re KBR, Inc.*, 893 F.3d 241 (4th Cir. 2018) ....................................... 2

*In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326 (4th Cir. 2014) *passim*

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996). ..................................... 6, 7

*Roedler v. Dep't of Energy*, 255 F.3d 1347 (Fed. Cir. 2001). ................... 20

*Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009) ........................... *passim*

*Sec'y of State for Def. v. Trimble Nav. Ltd.*, 484 F.3d 700 (4th Cir. 2007) ..................................................................................................... 20

*Tangen v. Fluor Intercontinental, Inc.*, No. 6:21-cv-00335-JD (D.S.C.) .. 1

*Tolan v. Cotton*, 538 F. App'x 374 (5th Cir. 2013) (en banc) ................. 18

*Tolan v. Cotton*, 572 U.S. 650 (2014), ................................................. 17

*U.K. Ministry of Def. v. Trimble Navigation Ltd.*, 422 F.3d 165 (4th Cir. 2005) .................................................................................................. 20

*Wyeth v. Levine*, 555 U.S. 555 (2009) ................................................... 6

## Statutes
28 U.S.C. § 1442(a)(1) ......................................................................... 14
28 U.S.C. § 2671 ............................................................................... 4, 6

## Rules
U.S. Court of Appeals for the Fourth Circuit, *Appellate Proc. Guide* (Dec. 2023) ........................................................................................ 12

## Regulations
Army Reg. 715-9 ¶ 4-1.d (Mar. 2017) ................................................... 16

# PRELIMINARY STATEMENT

The panel's decision conflicts with the Supreme Court's decision in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), and relevant preemption jurisprudence, as well as this Court's application of *Boyle* in *In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326 (4th Cir. 2014) (*Burn Pit*). Rehearing is necessary to maintain uniformity in this Circuit's decisions.

Rehearing is also necessary because this proceeding involves questions of exceptional importance.[1] *First*, the panel's decision conflicts with the Second Circuit's recent decision, *Badilla v. Midwest Air Traffic Control Service, Inc.*, 8 F.4th 105 (2d Cir. 2021), *cert denied*, 143 S. Ct. 2512 (2023), which more closely aligns with *Boyle* than this Court's *Burn Pit* decision. *En banc* consideration is necessary to adopt *Badilla*'s standard and eliminate a circuit split that creates inconsistent tort liability for contractors and tort recovery for injured parties. *Second,* the panel's decision preempted a sovereign State's laws and trespassed upon principles of judicial restraint and federalism. *Finally*, the panel's

---

[1] This decision affects Hencely's and thirteen related cases stayed pending this appeal. *E.g.*, *Tangen v. Fluor Intercontinental, Inc.*, No. 6:21-cv-00335-JD (D.S.C.) (ECF No. 98).

1

decision is the first time this Court has applied *Burn Pit*'s preemption analysis to the facts of a case.[2] The panel's application is wrong because it grants contractors unprecedented immunity based upon an improperly construed summary judgment record. This should not be this Circuit's final word on this matter of exceptional importance.

## INTRODUCTION

As the Army's investigation found, Defendant Fluor negligently allowed one of its workers the means and opportunity to construct a bomb that permanently wounded Specialist Winston Hencely and killed or injured dozens of others. The panel erred by holding that the Federal Tort Claims Act, which does not apply to government contractors, preempted Hencely's tort claims against Fluor.

The Supreme Court held in *Boyle* that the FTCA implied a narrow preemption of state product-liability law that applies only to claims against military contractors when there is an actual conflict between such claims and a discretionary governmental function. In *Burn Pit*, this Circuit held that under *Boyle*, the FTCA's "combatant activities"

---

[2] When *Burn Pit* returned to this Circuit, the preemption issue was not addressed. *In re KBR, Inc.*, 893 F.3d 241, 264 (4th Cir. 2018).

exception similarly preempts tort claims against military contractors when such claims conflict with the Government's combatant activities. Properly applied, state law is only preempted under *Boyle* if it actually conflicts with Government activity excepted from the FTCA. The panel departed from that important limitation by applying *Burn Pit* to preempt Hencely's tort claims based upon the military's general supervision and oversight of Fluor without identifying an actual conflict between Fluor's state law tort duties and a specific military directive or command. Thus, Hencely's claims should not have been preempted.

In reaching its decision, the panel did not address the Second Circuit's conflicting decision in *Badilla*. *Badilla* rejected a contractor's invocation of preemption even though that case involved far more pervasive military oversight than Fluor was subject to here. Noting *Boyle*'s atextual foundation, *Badilla* held that *Boyle* preemption applies only when the military specifically authorized or directed the activity giving rise to the state law tort claim. Instead of extending *Boyle* beyond its narrow limits as the majority did here, *Badilla* was faithful to *Boyle* and the FTCA's text. This Court should adopt *Badilla*'s standard.

The panel's opinion presents nearly every ground for rehearing. It overlooks, and misconstrues, material facts relating to the extent of military authority over Fluor's tortious actions while misapplying Supreme Court and Circuit precedent. And it did not address the circuit split created by its decision. Rehearing *en banc* should be granted to correct the conflict with this Circuit's and other Circuits' law and to decide these issues of exceptional importance.

## I.   The panel's decision conflicts with the FTCA, *Boyle*, and preemption jurisprudence.

The text of the FTCA, 28 U.S.C. § 2671, *et seq*., which governs tort claims against the United States, does not apply to federal contractors, *see id*. (defining "federal agency" not to include "any contractor with the United States"), or retain for them the United States' sovereign immunity, *Saleh v. Titan Corp.*, 580 F.3d 1, 26 (D.C. Cir. 2009) (Garland, J. dissenting) ("[I]t is not plain that the FTCA's policy is to eliminate liability when the alleged tortfeasor is a contractor rather than a soldier. That, after all, is not what the FTCA says.").

But from the penumbra of the FTCA, the Supreme Court has implied a novel, but narrow, preemption of claims against military contractors. *See generally Boyle*, 487 U.S. at 500. *Boyle* considered

product liability claims against a helicopter manufacturer. The plaintiff alleged that a military-designed, outward-opening door caused a soldier to drown after the aircraft crashed. Relying on the FTCA's "discretionary function" exception, *Boyle* held that state product liability claims were preempted if they imposed a duty in conflict with the Government's "discretionary functions." *Id.* at 511-14. *Boyle* preempted the claims arising from the soldier's death because the asserted tort duty conflicted with the contractor's obligation to follow the Government's helicopter design—a discretionary function. *Id.* at 509.

*Boyle*'s narrow preemption ruling created a three-part test. First, *Boyle* identified "uniquely federal interests" in tort suits against government contractors. *Id.* Second, it determined that state product-liability law conflicted with federal interests based on the FTCA's prohibition of tort suits involving the Government's discretionary functions. *Id.* Third, the Court devised a test to determine the proper scope of preemption in light of the conflict with federal interests. *Boyle* preemption extends only where "the state-imposed duty of care that is the asserted basis of the contractor's liability . . . is *precisely contrary* to

the duty imposed by the Government contract . . . ." *Id.* at 507. The panel's decision transgressed *Boyle*'s limiting principle by preempting a state-law claim in the absence of any actual conflict with Government action.

*Boyle* itself was on feeble jurisprudential footing—the panel should not have extended it. The FTCA retains the Government's immunity and expressly excepts contractors from its provisions. 28 U.S.C. § 2671. It provides no textual basis for contractor immunity. *See Boyle*, 487 U.S. at 504 (acknowledging prior refusal "to find federal pre-emption of state law in the absence of either a clear statutory prescription, or a direct conflict" (citations omitted)). In other contexts, the Supreme Court has held that federalism warns against expansive preemption of state law. "Because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). *Cf. Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ("[W]e 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act *unless that was the clear and manifest purpose of Congress.*'" (quoting *Lohr*, 518

U.S. at 485) (emphasis added)). These admonitions make clear that *Boyle* must not extend FTCA immunity beyond actual conflicts between tort law and *Government* action.

Here, however, the panel displaced South Carolina's tort law where neither Congress nor the Supreme Court endorses preemption. *See Lohr*, 518 U.S. at 485 (defining carefully "the scope of [Congress's] intended invalidation of state law . . . to support a narrow interpretation of such express command . . . consistent with both federalism concerns and the historic primacy of state regulations of matters of health and safety."). Hencely acknowledges that the Circuit is bound by *Boyle* but it does not sanction preemption here. The panel's disregard for *Boyle*'s limits and federalism's guardrails warrants rehearing *en banc*.[3]

## II. The panel's decision applied *Burn Pit* incorrectly, or at the very least, *Burn Pit* should be reconsidered.

In *Burn Pit*, this Circuit reversed the trial court's grant of summary judgment in a suit by servicemembers injured by a military contractor's waste-burning. *Burn Pit* applied *Boyle*'s implied federal

---

[3] Federal employees enjoy less immunity. *Al-Shimari v. CACI Int'l, Inc.*, 658 F.3d 413, 435 (4th Cir. 2011) (King, J. dissenting).

common law preemption to the FTCA's "combatant activities" exception, following the "three-step process to determine whether federal law preempted state law." 744 F.3d at 347. Here, the panel's application of precedent was wrong, or at best, misguided.

Following *Boyle*, *Burn Pit* first identified the "uniquely federal interests" at play. *Id.* *Burn Pit* expressly rejected the expansive articulation of the federal interests in *Saleh*. *Saleh* concluded that despite "barren" legislative history the "policy embodied by the combatant activities exception is simply the elimination of tort from the battlefield." 580 F.3d at 7. *Burn Pit* instead adopted the Third Circuit's more narrow articulation of the pertinent federal interest: "The purpose underlying [the FTCA]. . . is to foreclose state regulation of the military's battlefield conduct and decisions." 744 F.3d at 348 (quoting *Harris v. Kellogg, Brown & Root Servs., Inc.*, 724 F.3d 458, 480 (3d Cir. 2013)). This Court also agreed with the Third Circuit's observation that "the FTCA 'does not provide immunity to nongovernmental actors . . . , to say that Congress intended to eliminate all tort law is too much.'" *Id.* (quoting *Harris*, 724 F.3d at 480). Put plainly, the FTCA does not

eliminate all tort claims against a military contractor—even in a combat theater.

*Burn Pit*'s narrower view of the relevant federal interests should have resulted in a correspondingly narrower application of *Boyle*'s second and third steps. Confusingly, it did not. Instead of consistently rejecting *Saleh*'s expansive reasoning, *Burn Pit* followed *Saleh* when analyzing *Boyle*'s second and third steps. Regarding *Boyle*'s second step (conflict between tort law and federal interests), *Burn Pit* held:

> [W]hen a state tort law touches the military's battlefield conduct and decisions, it inevitably conflicts with the combatant activity exception's goal of eliminating such regulation of the military during wartime. In other words, "the federal government occupies the field when it comes to warfare, and its interest in combat is always 'precisely contrary' to the imposition of a non-federal tort duty."

*Id.* at 349 (quoting *Saleh*, 580 F.3d at 7).

Similarly, at *Boyle*'s third step (scope of preemption), *Burn Pit* adopted *Saleh's* test without modification: "During wartime, where a private service contractor is integrated into combatant activities over which the military retains command authority, a tort claim arising out of the contractor's engagement in such activities shall be preempted."

*Id.* (quoting *Saleh*, 580 F. 3d at 9).

*Burn Pit*'s inconsistent reliance on *Saleh* caused great mischief in this case. The panel heavily cited to *Saleh*'s reasoning, even where *Burn Pit* arguably rejected or intentionally ignored it. For example, rejecting Hencely's argument that preemption is unwarranted in the absence of conflict between Fluor's tort and contractual duties, the panel remarked that this argument "overlooks the 'more general' nature of 'battle-field preemption.'" Op. at 25 (quoting *Saleh*, 580 F.3d at 7). But *Burn Pit* did not adopt "battle-field preemption"—*Saleh* did. To the contrary, this concept conflicts with *Burn Pit*'s rejection of *Saleh*'s "elimination of tort from the battlefield" rationale. 744 F.3d at 348. The panel also held found that because the military retained command authority over Fluor's "supervision of Local Nationals" (Fluor's workers), Op. at 29, Hencely's claims arising from Fluor's negligent supervision, retention, and entrustment of tools are "per se" preempted, *id.* (quoting *Saleh*, 580 F.3d at 7). Once again, the panel enforced *Saleh*'s "per se" preemption, which was not adopted by *Burn Pit*.

Perhaps most problematically, the panel described this Circuit's preemption test as the "ultimate military authority" test—again a quote from *Saleh* not found in *Burn Pit*. *Id.* at 26 (quoting *Saleh*, 580

F.3d at 12). This subtly rebranded test purportedly justified the "breadth" of the panel's "displacement of state law" (another *Saleh* quote). *Id.* At this point, the panel finally provided a "see also" cite and parenthetical from *Burn Pit*'s holding that "state tort law is preempted 'when it affects activities stemming from military commands.'" *Id.* (quoting *Burn Pit*, 744 F.3d at 351). Nevertheless, the panel identified *no instance* where Fluor's tortious conduct "stemm[ed] from military commands" in this case *Id.* It could not, of course, because Fluor's tortious conduct *directly contradicted* the military's contractual command that Fluor supervise its own personnel. (The panel's error on this point is exacerbated by its expansive construction of the record regarding the military's authority over Fluor's tortious conduct. *See infra*, Part IV.).

In *Burn Pit*, this Circuit rejected *Saleh's* "elimination of tort from the battlefield" rationale in favor of the more narrowly defined federal interest of "foreclosing state regulation of the military's battlefield conduct and decisions." 744 F.3d at 348. *Badilla*, decided after *Burn Pit*, pointed out that *Burn Pit*'s protection of a narrower set of federal interests should have resulted "in a correspondingly more modest

displacement of state law[.]" *Badilla*, 8 F.4th at 128. Thus, *Badilla*
explained that *Burn Pit* permitted preemption only if the "challenged
action can reasonably be considered *the military's own conduct* or
decision ***and*** the operation of state law would conflict with that
decision." *Id.* (emphasis added.). The panel's application of *Burn Pit*
departs from *Badilla*'s, further warranting *en banc* consideration.

In any event, whether due to misapplication of or mistake in *Burn
Pit*, the panel's opinion merits *en banc* rehearing.

### III. The panel's conflict with Supreme Court precedent is magnified by the new split with the Second Circuit, which the panel did not address.

In addition to contravening Supreme Court precedent, the panel
created a split with the Second Circuit's *Badilla* decision. Rehearing
should be granted because *Badilla* was right and the "conflict is not
addressed in the opinion." *See* U.S. Court of Appeals for the Fourth
Circuit, *Appellate Proc. Guide* (Dec. 2023).

*Badilla* involved claims brought by civilians after their plane
crashed at Kabul Afghanistan International Airport. The plaintiffs sued
a contractor, Midwest Air Traffic Control Service, Inc. (Midwest),
alleging Midwest's negligent air traffic control caused the crash. Like

here, Midwest argued that the combatant activities exception preempted such tort claims because Midwest was supervised by the military. The Second Circuit disagreed.

*Badilla* agreed with *Burn Pit*'s narrower articulation of the federal interests at play in cases like this one: "'[T]o foreclose state regulation of the military's battlefield conduct and decisions.'" 8 F.4th at 128 (quoting *Harris*, 724 F.3d at 480) (citing *Burn Pit*, 744 F.3d at 348). It similarly declined to endorse *Saleh's* expansive reasoning. *See id.* (describing *Saleh*'s opinion as "broadly" holding; a "blanket statement"; and "a broad interest indeed").

But *Badilla* diverged from *Burn Pit* in its consideration of *Boyle*'s final step—the appropriate scope of state-law displacement. Unlike *Burn Pit, Badilla* held, "the combatant activities exception does not displace state-law claims against contractors unless (1) the claim arises out of the contractor's involvement in the military's combatant activities, and (2) *the military specifically authorized or directed the action giving rise to the claim.*" *Id.* at 128 (emphasis added). *Badilla* explained that this test was the best "balance between protecting military decision making and opening the federal courthouse doors to a

plaintiff's legitimate state-law claims." *Id.* at 129. Applying that test, *Badilla* found no evidence that the military authorized or directed Midwest's alleged negligent conduct. Thus, preemption did not apply.

*Badilla* so held despite finding that the military exercised significant oversight over Midwest's activity. The military retained authority over Midwest's air traffic operations (decidedly more robust than the military's control over Fluor here). Midwest's federal contract placed it alongside U.S. and NATO forces and it reported directly to a "senior air traffic control officer and his deputy, both of whom were United States Air Force officers." *Id.* Midwest's controllers were directly integrated into the military chain of command, and all operational issues (including staffing) were routed through military officers. *Id.*[4]

The military also prescribed a web of rules governing Midwest and its allegedly tortious conduct. These rules included specific documents or instructions from senior officers, local procedures, standard operating procedures, and two industry guidelines. Midwest's contract incorporated these rules, along with specific federal regulations. Despite

---

[4] *Badilla*'s subject-matter jurisdiction was predicated upon federal officer removal—more indicia of the contractor's federal authority. *See* 28 U.S.C. § 1442(a)(1).

these mandates, direct military oversight, and Midwest's integration

into the military's chain of command, *Badilla* concluded that

preemption was unwarranted because there was "no evidence that the

Government directed" or "issued[d] a *specific* instruction that

compelled" the contractor's negligent actions. *Id.* (emphasis added).

    *Badilla* conflicts with the panel's decision. Hencely's claim that

Fluor negligently supervised the bomber is limited to supervision by

Fluor in his worksite where Fluor failed to prevent him from

assembling a bomb and failed to ensure he boarded the bus off the base

on the day of the bombing. Hencely's negligent retention claim focuses

on Fluor's failure to fire the bomber despite repeated bad conduct.

Hencely's negligent entrustment claim focuses on Fluor's tool-lending

protocol, which was not dictated or governed by military rules. There is

no evidence of military authorization, direction, or even general

supervision of Fluor's actions in any of these discrete areas for which

the military made Fluor entirely responsible.

    More compellingly, unlike Midwest Fluor was not in the military's

chain of command. *See* Op. at 28–29 ("under Army regulations, no

private services contractor is ever 'part of the operational chain of

command."' (quoting Army Reg. 715-9 ¶ 4-1.d (Mar. 2017)). And neither Fluor nor the panel identified any conflict between Fluor's tort duties and its contractual responsibility for supervising, retaining, and entrusting tools to its workers. As the panel acknowledged, Fluor's contract assigned Fluor, not the Army, "responsibility for 'oversight of . . . personnel . . . to ensure compliance with' and performance of its contract, military protocols for Bagram Airfield . . . . ." Op. at 27 (quoting J.A.394 ¶ 1.07(b)).

Properly construed, the record demonstrates no conflict between what the Government required from Fluor and Fluor's tortious conduct. Quite the opposite: the Army's instructions and policies were consistent with Fluor's tort duties. The Army's AR-15-6 investigative report found the bomber likely built his vest as the sole employee on the night shift with Flour's "sporadic supervision," Op. at 9, and the "primary contributing factor" to the bombing was "Fluor's complacency and its lack of reasonable supervision of its personnel," *id.* Overlooking these facts, the panel inferred from the Army's base security and access policies evidence of general military "command" that preempted

Hencely's claims. Under *Badilla*, such generalized supervision would be insufficient to warrant preemption.

Now, whether a claim would be preempted under *Boyle* is based principally on whether a contractor is located in the Second Circuit or the Fourth. While it is not this Court's role to resolve circuit splits, it should reevaluate *Burn Pit* in light of *Badilla's* well-reasoned and appropriately limited application of contractor preemption under *Boyle*.

Accordingly, this Circuit should rehear this case and adopt *Badilla*'s reasoning.

## IV. The panel majority erred by construing facts against Hencely at summary judgment.

The panel also erred when it construed multiple facts against Hencely. In *Tolan v. Cotton*, 572 U.S. 650 (2014), the Supreme Court vacated and remanded a Fifth Circuit decision that, as here, construed facts relevant to an immunity defense against a plaintiff. Dissenting from denial of rehearing in the Circuit, Judge Dennis predicted that the "opinion's pro-defendant recitation of facts fails to address evidence that, when viewed in the light most favorable to the plaintiff, creates genuine issues of material fact" relating to qualified immunity. *Tolan v. Cotton*, 538 F. App'x 374, 375 (5th Cir. 2013) (en banc) (Dennis, J.

dissenting). The Supreme Court vindicated Judge Dennis's dissent, vacating and remanding the case for trial. This Court should thus rehear and properly construe the factual record.

The panel's decision concludes that the Army's general control over security and Bagram Airfield preempted Hencely's negligent supervision claim. While the majority is correct that the military had rules relating to general base security and access, it inappropriately inferred that this general military "command" extended to areas and activities that both Fluor's contracts and the Army's investigation determined were under Fluor's control. *See* JA548 (AR 700-137: "LOGCAP contractor personnel are not part of the operational chain of command, but are supervised through their own management chain consistent with the terms and conditions of their contract."); JA3685:20 (Retired Army contracting officer Gordon Jones: "Fluor supervises their employees"); JA3300 (Army Contracting Officer Representative handbook: "Terminations of employment are actions taken by the contractor."); Op. at 9 (describing Army investigation).

As to Hencely's negligent retention and entrustment claims, Judge Heyten's partial dissent rightly observed that

there are genuine disputes of fact relevant to the second preemption requirement—whether the military 'retained command authority' over certain types of decisions. In particular, I think a reasonable adjudicator could find that Fluor retained 'considerable discretion' over whether to allow employees to access tools they did not need or fire employees for poor job performance."

Op. at 34 (citation omitted) (first quoting *Burn Pit*, 744 F.3d at 351; then quoting *Harris*, 724 F.3d at 481).

Indeed, the panel barely addressed Hencely's retention and entrustment claims. Where it did, its factual construction overlooked Fluor's total responsibility for supplying tools to its employees and firing its employees for any reason (something the Army expressly could not do). *See* JA394 ¶ 01.07; JA3298–3300. The majority glossed over these facts, citing to the military's "ultimate command authority." Op. at 24. The panel's factual misconstruction catalyzed the improper application of preemption in this case by inferring expansive military authority over Fluor's conduct.

The panel's improper application of the summary judgment standard also infected Hencely's contract claim. Specifically, it overlooked a factual dispute about the contracting parties' (the Army and Fluor) intent to make soldiers like Hencely third-party beneficiaries

under Fluor's contract. "When the intent to benefit the third party is not expressly stated in the contract, evidence thereof may be adduced." *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001). This includes looking "beyond the contract to the circumstances surrounding its formation." *U.K. Ministry of Def. v. Trimble Navigation Ltd.*, 422 F.3d 165, 173 (4th Cir. 2005) (quotation omitted). "[T]he inquiry into third-party beneficiary status is fact sensitive and not ordinarily ripe for resolution at the motion-to-dismiss stage." *Sec'y of State for Def. v. Trimble Nav. Ltd.*, 484 F.3d 700, 709 (4th Cir. 2007). The panel should not have granted Fluor judgment on the pleadings.

The majority's factual analysis overlooked extra-contractual evidence of the parties' intent. *See* Op. at 31, 32. While the panel briefly mentions Fluor's advertisements evidencing intent to benefit soldiers by its contractual performance, it summarily dismissed, without citation, this and other evidence of intent—or construed it against Hencely's position. *See* Op. at 32. It ignored the evidence Hencely put forth showing the parties' intent, violating the summary judgment standard. *See* Appellant's Br., at 61–62.

**CONCLUSION**

This Circuit should vacate the panel decision, rehear, and remand

for trial.

Respectfully submitted this 13th day of November, 2024.

s/ *Beattie Ashmore*
BEATTIE B. ASHMORE, #5215

JAMES E. BUTLER, JR.
Georgia Bar No. 099625
jim@butlerprather.com
DANIEL E. PHILYAW
Georgia Bar No. 87765
dan@butlerprather.com
ALLISON BRENNAN BAILEY
Georgia Bar No. 478434
BUTLER PRATHER LLP
P.O. Box 2962
105 13th Street
Columbus, GA 31901
T:  (404) 321-1800
F:  (404) 321-2962

ROBERT H. SNYDER, JR
Georgia Bar No. 404522
Cannella Snyder LLC
rob@cannellasnyder.com
315 W. Ponce de Leon Ave., Ste. 885
Decatur, GA 30030
T:  (404) 800-4828
F: (404) 393-0365

PAUL PAINTER, III
Georgia Bar No. 520965
paul@bowenpainter.com
W. ANDREW BOWEN, #10510
andrew@bowenpainter.com
STEPHEN D. MORRISON, III
Georgia Bar No. 700828
stephen@bowenpainter.com
BOWEN PAINTER, LLC
308 Commercial Drive, Ste. 100
Savannah, GA 31406
T:  (912) 335-1909
F:   (912) 335-3537

BEATTIE B. ASHMORE, #5215
Beattie@BeattieAshmore.com
BEATTIE B. ASHMORE, P.A.
650 E. Washington Street
Greenville, S.C. 29601
T:  (864) 467-1001
F:  (864) 672-1406

D. JOSEV BREWER #9188
Joe@JoeBrewerlaw.com
The Law Office of D. Josev Brewer
650 E. Washington Street
Greenville, SC 29601
T:  (864)383-5250

***Attorneys for Plaintiff-Appellant***

## STATEMENT REGARDING ORAL ARGUMENT

If the Court grants rehearing or rehearing *en banc*, Specialist Hencely requests oral argument because the record is voluminous and the legal issues are complex. This case involves unsettled questions regarding the extent to which the federal common law implies sovereign immunity for federal contractors. The panel's decision conflicts with Supreme Court precedent and other circuit decisions on this important issue. The Court may benefit from the opportunity to question counsel about these issues.

BEATTIE B. ASHMORE, P.A.

/s/ *Beattie Ashmore*
*Attorney for Plaintiff–Appellant*

# CERTIFICATE OF COMPLIANCE

This document complies with the world limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,892 words. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

BEATTIE B. ASHMORE, P.A.

/s/ *Beattie Ashmore*
*Attorney for Plaintiff–Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that I filed an electronic copy of the within pleading with the Clerk's Office of the United States Court of Appeals for the Fourth Circuit using the CM/ECF system which will automatically send email notifications of such filing to all counsel of record in this matter. Pursuant to the Court's Notice concerning Updated Access & Operating Procedures in Response to COVID-19 dated June 11, 2021, and confirmation with the Clerk of Court, the Court's paper filing requirements are suspended until further notice.

This 13th day of November, 2024.

BEATTIE B. ASHMORE, P.A.

/s/ *Beattie Ashmore*

BEATTIE B. ASHMORE, #5215
Beattie@BeattieAshmore.com
BEATTIE B. ASHMORE, P.A.
650 E. Washington Street
Greenville, S.C. 29601
T: (864) 467-1001
F: (864) 672-1406

*Attorney for Plaintiff–Appellant*